[Ex parte King.]

term in the penitentiary, which he is still serving, and there was a mistrial as to South. On this trial, Finch, against defendant's objection, was introduced and examined as a witness for the State. The conviction and sentence of Finch operated a complete severance of his case from that of South. It is not easily conceived how the witness, under such circumstances, could have any interest in the result of the trial. The reason for the exclusion of co-defendants as witnesses can have no application to a case like this. Here there is nothing to be gained by perjury. Neither the conviction nor the acquittal of South could relieve Finch of the sentence which had been pronounced against him, nor, of itself, even serve to present in a more favorable light an application for executive clemency. There was no error in receiving his testimony.—*Henderson v. State*, 70 Ala. 24.

The objection to the admission of the testimony of Daniel Kirkland was general, going to the whole of his evidence, a great part of which was clearly competent. Granting that some of this evidence was illegal (which, however, we do not decide), the objection was too general and indefinite, and on this ground was properly overruled.—3 Brick. Dig. p. 443, §§ 567 *et seq.*

This evidence sufficiently showed that the witness, Kit Kirkland, was permanently absent from the State, and furnished a predicate for evidence of his testimony as given on a former trial of the case.—*Lowe v. State*, 86 Ala. 47; s. c. 5 So. Rep. 435.

The judgment of the Circuit Court is affirmed.

# *Ex parte* King.

## *Application for Bail on Habeas Corpus.*

1. *Right to bail; murder in first degree.*—A person who is in custody under a charge of murder, is entitled to bail as matter of right, unless the proof is evident, or the presumption great, that he is guilty of murder in the first degree (Code, § 3725; Const. Ala., Art. 1, § 17); and this can not be affirmed by the court, when the evidence adduced shows that he was not the aggressor, but sought to avoid the difficulty, although there is also evidence of a declaration made by him several months before, to the effect that, if ever the deceased "made a break at him, he would kill him."

[Ex parte· King.]

APPLICATION by petition in behalf of Thomas E. King, "for the writ of *habeas corpus, certiorari*, or such other remedial writ as may be appropriate," to procure his release from custody on bail; he being confined in the jail of Mobile on the charge of murder, and bail having been refused him by Hon. O. J. SEMMES, of the City Court, to whom the application was first made. On the hearing before Judge SEMMES, a bill of exceptions was reserved to his ruling and decision; and the application to this court is based on the evidence set out in the bill of exceptions, which is made an exhibit to the petition.

GREG. L. & H. T. SMITH, for the petitioner.

W. L. MARTIN, Attorney-General, for the State.

STONE, C. J.—This is an application for a writ of *habeas corpus*, on appeal from a ruling of the Judge of the City Court of Mobile.

The petitioner, King, was committed to prison by the Mayor of Mobile, acting as a committing magistrate, on a charge of murder. Petitioner was carried before the Judge of the City Court by writ of *habeas corpus*, and the testimony was there heard. The purpose of the application was to obtain the prisoner's enlargement on bail. The application was denied, and the prisoner remanded to jail.

The testimony shows, clearly and unmistakably, that King did not provoke the difficulty, but that, to all appearance, he desired to avoid it. All the testimony tends to show that Popham, the deceased, was the aggressor, and that he was both violent and boisterous. At the time the shot was fired, he was pressing on King, and struck him with sufficient force to stagger him, when King immediately shot and killed him. If this were all the proof, it is probable there could, at the utmost, be no pretense that the homicide was murder.

The witness O'Grady testified, that a few months before the homicide, he heard King, the defendant, say, if Popham, the deceased, "ever made a break at him, he would kill him." This, followed up by the homicide, would, ordinarily, supply the element of formed design. And if King had provoked the difficulty, or had entered willingly into the quarrel, this would go far to show that he killed Popham pursuant to that formed design. The testimony, however, tends to show that he not only did not provoke the difficulty, but that he

endeavored to allay Popham's anger, and to avert the rencontre.

In the meagre state of the testimony furnished us, we are not able to affirm that "the proof is evident, or the presumption great," that the homicide was a "willful, deliberate, malicious and premeditated killing."—Constitution of Ala. Art. I, § 17; Code of 1886, § 3725.

We wish not to prejudge the case, nor to so far pronounce on its merits as to control its determination, when a fuller presentation of the facts will probably be made, and the jury will be assisted by the arguments of counsel. All we decide is, that on the testimony before us, it is not shown that the defendant is guilty of murder in the first degree—the only grade of homicide which may be punished capitally, and which precludes the accused from obtaining bail.

The writs of *habeas corpus* and *certiorari* will be awarded to bring the prisoner and the record of commitment before this court, unless, on this ruling, the petitioner elects to renew his application before a court of primary jurisdiction, having jurisdiction in the premises.

# *Ex parte* Robinson.

## *Application for Discharge on Habeas Corpus.*

1. *Application for discharge or bail; examination of witnesses; practice.* When a person has been regularly committed on a criminal charge, and makes application for bail or a discharge on *habeas corpus*, the State may rely on the *prima facie* case made by the order of commitment; and the petitioner is not entitled to bail, or a discharge, on the evidence adduced by him, unless the witnesses examined on the preliminary investigation are produced, or their absence is accounted for; but, when witnesses on the part of the State are produced and examined, and their testimony fails to establish the charge, the petitioner is entitled to relief, although it does not appear that these were the same and the only witnesses examined on the preliminary investigation.

2. *Agent of foreign insurance company; criminal liability of.*—As to the criminal responsibility of an agent of a foreign insurance company, which has not complied with the statutory regulations limiting its right to do business in this State, sections 1205 and 3897 (Code of 1886) are to be construed together, both being parts of the same general statute approved December 12th, 1884; and under said former section (1205), defining who are agents, a person who, as agent, "inspects a risk" for the company, is not within the provisions of the latter section (3897), unless it was done "in the making of a contract of insurance."